## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

WILLIAM R. JOHNSON,

     Plaintiff,

v.

MARIA BORELL, individually, and
JANE DOES 1-10,

     Defendants.

CIVIL ACTION NO.:

**JURY TRIAL DEMANDED**

### VERFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, WILLIAM R. JOHNSON ("Plaintiff" or "JOHNSON"), by and through his undersigned counsel, hereby files this Verified Complaint for Damages and Injunctive Relief against Defendants MARIA BORELL ("BORELL") and JANE DOES 1-10 (collectively with BORELL, "Defendants"), and, in so doing, states and alleges as follows:

### PARTIES

1.  Plaintiff resides in this judicial District as a resident of Boynton Beach, Florida, and is otherwise sui juris.

2.  Defendant BORELL, upon information and belief, currently lives in the Town of Onondaga, New York.  At all times material to the claims asserted herein Defendant Borell was a resident of Onondaga County, New York, but is otherwise sui juris for the reasons set forth herein.

3.  Defendants Does 1-10, (herein Does 1-10) are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in jurisdictions outside of this District, but have directed their activities to this District.

4.      Does 1-10 have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17. Does 1-10 target their tortious activities toward the public throughout the United States, including within this District, through intentional posting of the defamatory content online through publicly accessible websites, platforms and email communications. Does 1-10 use aliases in conjunction with these defamatory communications and publications online.

5.      Does 1-10 have registered, established, or purchased, and maintained their alias online account names, email addresses or screen names (collectively "Aliases"). Does 1-10 may have engaged in fraudulent conduct with respect to the registration and/or maintenance of the Aliases by providing false and/or misleading information during the registration or maintenance process related to their respective Aliases. Many Does 1-10 have anonymously registered and/or maintained some of their Aliases for the sole purpose of engaging in unlawful activities.

6.      Upon information and belief Defendant BORELL is responsible for the registration and use of some or all of these Aliases in connection with the allegations herein.

## NATURE OF ACTION

7.      This is an action arising from Defendants transmission and publication of false and defamatory statements made to numerous third parties about Plaintiff.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and any attorney fees, and (2) there is complete diversity for purposes of this Court exercising subject-matter jurisdiction because Plaintiffs and each individual Defendant are citizens of different states. 28 U.S.C. § 1332(a)(1).

2

9.      This Court possesses personal jurisdiction over Defendants pursuant to Florida Statute §48.193(1)(a) on the grounds that Defendants committed a tortious act in this state as alleged in this Complaint.

10.      This Court has personal jurisdiction over Defendants by virtue of each Defendants' regular and systematic contacts with and within the State of Florida, and because they have the requisite minimum contacts with Florida necessary to constitutionally permit the Court to exercise jurisdiction over them consistent with traditional notions of fair play and substantial justice by, among other things, committing torts using the Internet in the State of Florida and around the world targeting a resident of this District of this State.

11.      This Court has personal jurisdiction over Defendants by virtue of each Defendants' knowing and willful acts targeting a forum resident, knowing they would cause harm to a forum resident, and intending to cause harm to a forum resident.

12.      Defendants intentionally directed illegal acts towards the citizens and residents of the State of Florida and this District in particular, as that is where Plaintiff is located.

13.      Florida law governs the state law claims asserted herein by the Plaintiff against the Defendants.

14.      Venue is proper in the United States District for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events or omissions giving rise to this Complaint occurred in this District, including the transmission and publication of the false and defamatory statements into this District (and other Districts), Defendants are subject to this Court's personal jurisdiction with respect to this action and the Plaintiff resides in this District.

15.     All conditions precedent to this action have occurred, have been performed, or have been waived, including meeting any applicable threshold jurisdictional amounts.

## FACTUAL ALLEGATIONS

### A.  Plaintiff's Racing Profession

16.     Plaintiff is an American professional sports car and stock car racing driver.

17.     As part of his professional career, from 2014-2019, Plaintiff was employed by Multimatic Motorsports and Ford Performance.

18.     As part of his professional career, from 2021-2022, Plaintiff was employed by Michael Levita's team, TPC Racing ("TPC Racing"), as a driver coach.

19.     As part of his professional career, from 2020 -2022, Plaintiff was employed by Jack Roush's NASCAR Team, Roush Fenway Keslowski's Racing ("RFK Racing"), as a driver coach and engineering consultant.

20.     As part of his professional career, beginning in 2020 Plaintiff coached the Chief Executive Officer of Ford Motor Company, Jim Farley.

21.     As part of his professional career, in 2022, Plaintiff drove for Dean Martin's team, KOHR Motorsport in IMSA.

22.     As part of his professional career, in 2023, Plaintiff drove for Todd Coleman's team TCR/Archangel Motorsports in the SRO series, as well as the IMSA series.

23.     Although Plaintiff has had a successful racing career, he is not a household name and is not a public figure. To the extent that he is a limited public figure, the limited universe wherein he would be considered to be so, is not coextensive with the audience at which the Defendants aimed their defamatory conduct.

B.  **Plaintiff and Defendant BORELL's Relationship**

24.     In or around June 2022, Plaintiff met Defendant BORELL through a dating site.

25.     On June 24, 2022, Plaintiff and Defendant BORELL first met in person when he was competing in Watkins Glen, New York at the IMSA Watkins Glen International race.

26.     From June 2022 to February 8, 2023, the Plaintiff and Defendant BORELL dated.

27.     In or around the end of September 2022, in connection with a disagreement between the couple, Defendant BORELL told Plaintiff "I will ruin your life forever."

28.     From September 22, 2022 to September 30, 2022, Plaintiff and Defendant BORELL broke off their relationship, but reconciled on October 1, 2022.

29.     On September 28th, Defendant BORELL admitted to threatening Plaintiff with "I will ruin your life forever."

30.     On February 8, 2023, Plaintiff was visiting Defendant BORELL in Nedrow, New York.

31.     On February 8, 2023, Plaintiff received a phone call from Michael Freeman of Innovation Motorsport in Thailand and they discussed the potential for Plaintiff to participate in five (5) races in Thailand throughout the 2023 season.

32.     Defendant BORELL demanded that Plaintiff not accept this offer to go to Thailand unless she was able to attend every race.  Plaintiff offered the possibility to fly Defendant BORELL to a few races, but explained it would not be financially possible or professional to have Defendant BORELL at every event.

33.     Plaintiff ended his relationship with Defendant BORELL that day on February 8, 2023.

### C.  **False Criminal Charges**

34.     On February 8, 2023, the same date Plaintiff ended his relationship with Defendant BORELL, Defendant BORELL set out to follow through with her threat to Plaintiff that she would "ruin [his] life forever." Defendant BORELL's first known overt act to further this plot was her falsely informing the Onondaga County Sheriff's Office that Plaintiff physically assaulted her by choking her during an argument they had at her home in Nedrow, New York.

35.     Plaintiff has always vehemently denied that he ever physically assaulted Defendant BORELL, and that such accusations were maliciously false.

36.     Unsatisfied with her initial efforts to reconcile the relationship, Defendant BORELL contacted the police again on February 8, 2023, and then executed an Affidavit Statement provided to Law Enforcement, wherein she falsely contended, *inter alia*, that

> "William Johnson" "squeezed my neck with his right hand and stated 'what's wrong you like it during sex' and then threw me onto the bed by my neck.  While his hand was around my neck it made it difficult to breath (*sic*).  I attempted to get up off the bed and then William picked me up while I was laying and threw me back down onto the bed.  William then grabbed a pillow and threw it over my face" (excerpt from "Affidavit Statement").

37.     Further, on February 8, 2023, Defendant BORELL then informed Plaintiff by text message that she was purportedly pregnant with Plaintiff's child, but there has never been any substantiation to this assertion and it is evident the pregnancy claim was made in yet another failed attempt to control Plaintiff and to reestablish the couple's relationship.

38.     On June 1, 2023, Plaintiff was humiliatingly arraigned in the Town of Onondaga Justice Court based on the maliciously false statements contained within Defendant BORELL's Affidavit Statement, and was criminally charged under New York Penal Law 121.11(A), Criminal obstruction of breathing or blood circulation, and New York Penal Law 240.26(1), Harassment in the second degree.

39.     In just three months, however, the District Attorneys' Office recognized Defendant BORELL's malicious lies and, on September 7, 2023, during a hearing before the New York court on these charges, Assistant District Attorney ("ADA") Stephanie Martin-Thom argued for a nunc-pro-tunc adjournment in contemplation of dismissal. During that hearing ADA Martin-Thom expressly called into serious doubt on multiple occasions the veracity and credibility of Defendant BORELL concerning the then learned-to-be baseless and false allegations BORELL made against Plaintiff.

40.     For example, ADA Martin-Thom testified as follows:

a.  "So that's when Ms. Borell's credibility starts going down, especially with regards to her indicating trying to delete an e-mail or wanting to delete an e-mail."

b.  "That this would be an adjournment in contemplation of dismissal nunc pro tunc, based on her credibility."

c.  "So I explained to Ms. Borell that I will not do that, yet Ms. Borell says she wants me to do that. I said, even if I did do that and we got a guilty plea, that would result in an appeal. Ms. Borell's response to me was that, I don't care, as long as it's on record. Ms. Borell's credibility has gone down at that point, your Honor."

d.  "She has actually responded to say that she spoke to another defense counsel, who was giving her legal advice on the case. I've had an opportunity to talk to that defense counsel and he has denied giving her any legal advice on the case. He actually, in fact, said that he told her that it's the People's decision how they proceed on the case. So there again, another knock to Ms. Borell's credibility."

e.  "Now, in the time between these phone calls, Ms. Borell has contacted multiple entities and individuals to falsely claim that the DA's office has not been contacting

her, has not been answering her questions, has not tried on this case. Well, your Honor, the record will reflect that, in fact, is not true. We have tried on this case. And yet, another knock to Ms. Borell's credibility is after everything. She has made these false claims that, your Honor, if we were to put her on the stand, we do not know what she would say even at this point."

f.  "Now, she was still contacting Mr. Johnson all the way through February 23rd of 2023, your Honor, after the filing of these charges indicating that she cannot help him do, quote-un-quote, damage control if he doesn't contact her, doesn't talk to her. So we have issue with that. Then there are social media posts in which Ms. Borell is -- whether it's by herself, with consulting other people, or whether other people are doing it on their own, they're denigrating Mr. Johnson's credibility as well. Which it appears now those text messages -- that it may have been Ms. Borell. I do not know. Upon information and belief. I do not know for sure. The illegal recording of the defendant that she admitted to, that's a knock on her credibility. It shows that she's willing to do whatever she can to effectuate the result that she wants to get."

41.  As a result of ADA Martin-Thom substantially doubting BORELL's credibility again and again on record, on September 15, 2023, both charges against Plaintiff were adjourned in contemplation of dismissal pursuant to Penal Law 170.55 by the Town of Onondaga Justice Court.

### D.  Defendant's Systematic Campaign to Ruin Plaintiff's Reputation and Career

42.  Beginning in or around February 24, 2023 through October 11, 2023, after Plaintiff made it explicitly clear that their relationship had ended, Defendants engaged in a systematic

defamation campaign to disparage Plaintiff's good reputation and to collapse his career as both a professional race car driver and racing coach.

43.     For example, in or around February 24, 2023, Defendants, upon information and belief, first shared the Affidavit Statement with several persons on social media platforms, including, Facebook and Twitter.

44.     The false statements within Defendant BORELL's Affidavit Statement have been viewed by an untold number of persons, and has been accessed by and viewed by persons within this District.

45.     Raising the maliciousness level of her efforts to "ruin [Plaintiff's] life forever," from February 25, 2023 to October 11, 2023, Defendants also, *inter alia*, (i) posted countless disparaging comments on various social media platforms, (ii) directly wrote to Plaintiff's employers and/or professional associates, family and friends regarding the false accusations contained in the Affidavit Statement, and (iii) provided Plaintiff's employers with the Affidavit Statement, while referring to it as a "Police Report."  The foregoing statements specifically referred to Plaintiff by name, referenced the false Affidavit Statement, and falsely accused Plaintiff of physically assaulting Defendant BORELL.

46.     As known to-date, Defendants directly contacted at least the following people with the defamatory and false statements, including the republication of the lie-laden Affidavit Statement: (a) Michael Levitas, TPC Racing team owner; (b) Todd Coleman, owner of TCR Archangel Motorsports and Estruxture; (c) Jack Roush, owner of RFK Racing; (d) Dean Martin, the owner of KOHR Motorsports; (e) Greg Gill, the Director, President and Head of Racing of the sanctioning body of SRO Series; and (f) other employees of SRO and IMSA racing series.

47.    The following statements made by Defendants during the orchestrated campaign to "ruin [Plaintiff's] life forever" that repeated false, defamatory and disparaging comments about Plaintiff:

a.    On February 24, 2023, Doe Defendant 1 under a username "Lizzie Moon" posted three times to Plaintiff's Facebook page a Twitter link to a "BillyJohnsonAbu" (said Twitter account username "BillyJohnsonAbu" herein associated with Doe Defendant 9) account which posted the Affidavit Statement and in doing so, tagged @IMSA and @FordPerformance.  Upon information and belief, @IMSA was IMSA's official Twitter account (now X account). Upon information and belief, @FordPerformance was Ford Performance's official Twitter account (now X account).

b.    On February 25, 2023, Doe Defendant 2 via Reddit account "Trustfundxx" started a thread titled: "Billy Johnson IMSA driver" under r/IMSA racing thread, which included the unlawful reposting of the Affidavit Statement in the thread.

c.    On February 25, 2023, Doe Defendant 3 via Reddit account "Amzbroo" posted a response under the above thread and stated: "ITS TRUE. The woman in question is my cousin. Billy choked and suffocated her two weeks ago."

d.    On February 25, 2023, Doe Defendant 2 via the same Reddit account, "Trustfundxx" started a thread titled: "Billy Johnson choked and suffocates girlfriend" under r/Sportscar_Racing thread.

e.    On February 25, 2023, Doe Defendant 4 via Reddit account "OkBid2016" started a thread titled: "IMSA Driver Billy Johnson" under r/IMSARacing thread.  Which included the unlawful reposting of the Affidavit Statement in the thread.

f.   On February 26, 2023, Doe Defendant 2 posts several more threads on Reddit through account, "Trustfundxx" claiming she was abused by a "pro race car driver and a driver coach."

g.   On February 26, 2023, Defendant BORELL emailed TPC Racing team owner, Michael Levitas, with the title: "Billy Johnson Driver Domestic Violence" and attached the Affidavit Statement to the email correspondence.  Defendant BORELL wrote to Mr. Levitas:

> Mr. Levitas
>
> I just thought you should be aware since Billy Johnson is so involved with TPC Racing Obstruction of Breathing is a pretty serious charge. STOP Domestic Violence.

h.   On February 26, 2023, Defendant BORELL emailed the team owner of RFK Racings NASCAR team, Jack Roush.  The email was titled "Billy Johnson Driver Domestic Violence" and attached the Affidavit Statement.  Defendant BORELL wrote to Mr. Roush:

> Mr. Roush
>
> I just thought you should be aware since Billy Johnson has worked with you in the past Obstruction of breathing is a very serious charge. STOP Domestic Violence!

i.   On February 27, 2023, Doe Defendant 5 via username "STOP Domestic Violence" commented on the website Sportscar365.com web article titled "23 Entries for St. Pete Season Opener" as follows: "Todd Coleman being coached by Billy Johnson the abuser?  The same Billy Johnson who choked his girlfriend in NY a couple weeks ago?".  Doe Defendant 5 included in the comment the Twitter link to the Affidavit Statement.

j.  On February 27, 2023, Doe Defendant 6, via username "rachrachsorbello", private messaged Plaintiff's employer, Todd Coleman on Instagram and said: "You should probably not associate yourself with Billy Johnson.  He abuses women! He strangled his girlfriend!!  It's all over the internet with police report.  Disgusting!"

k.  On February 27, 2023, Doe Defendant 6, via username "rachrachsorbello", also comments on Mr. Coleman's Instagram pages and posts a link to a fake Twitter page and comments: "You know Billy Johnson just strangled his girlfriend in NY right?!  Stop domestic violence!!!!" and she posted a link to the Twitter Affidavit Statement.

l.  On February 28, 2023, Doe Defendant 6 via username "rachrachsorbello", messages Mr. Coleman again and says: "You should probably not associate yourself with Billy Johnson.  He abuses women! He strangled his girlfriend!!  It's all over the internet with the police report. Disgusting!!"

m.  On February 28, 2023, Defendant BORELL wrote a text message to TPC team manager, Harris Levitas, and falsely accused Plaintiff, stating: "[Plaintiff] choked me and then suffocated me with a pillow".

n.  On February 28, 2023, Defendant BORELL emailed TPC team owner, Michael Levitas, and falsely accused Plaintiff of choking her and putting pillow over her face.

o.  On February 28, 2023, Doe Defendant 7, via username "locknkey_0" commented on Plaintiff's Instagram account saying "Narcissist woman abuser!!!  You can pretend all you want to your followers that you're some cool guy but in the shadows you are Mr. Hyde."

p.  On March 2, 2023, Doe Defendant 8 used a Twitter account which appears to be impersonating Plaintiff, namely @BillyJRacingUpdates.  On this account, Doe Defendant 6 posts the Affidavit Statement and wrote:

> Be sure to cheer Billy Johnson #DomesticViolence abuser as he drives with Todd Coleman for @ArchAngelMotors.com Choking (Obstruction of breathing) is ABUSE.
> #DomesticAbuse $abuseawareness
> @odvss @FirstThemNEWS @RegugeCharity @ndvh
> Real. Call the county. Follow for more!

q.  On March 3, 2023, Doe Defendant 6  made a post under the name @BillyJRacingUpdates, and later retweeted the post: "Not sure if @fordracingnews or @ESPN were aware of the allegations against Ford Racing driver Billy Johnson. Or anyone else."  Doe Defendant 6 also posted the Affidavit Statement.

r.  On March 4, 2023, Doe Defendant 6 made a post on Twitter, under the name @BillyJRacingUpdates which read: "Let's say it again for the people in the back. @BillyJRacing put his hands on women. @ONANDAGO_CO_DA has this case and knows this case. Please, bring this man to justice."

s.  On March 4, 2023, Doe Defendant 6 impersonated Plaintiff and with the  username @BillyJRacingUpdates posted the Affidavit Statement and wrote "Karma for Billy Johnson being a domestic violence abuser!?"

t.  On March 9, 2023, March 10, 2023, March 11, 2023, March 13, 2023, and March 25, 2023 Doe Defendant 7 post several messages impersonating Plaintiff using @BillyJRacingUpdates as follows:

  i.  March 9, 2023

    1.  "For Gabby Petito. Choking someone. Suffocating someone is never okay.  #DomesticAbuse #DomesticViolence"

2. "If they didn't want other people to know about it, they shouldn't have done it.  They had the audacity to hurt you, you have the right to share your story."

ii.   March 10, 2023
1. "#billyjohnson #imsa #domesticviolence @IMSA @GT4America @GaryPattersonSA (attaching redacted Domestic Incident Report)
2. (Posts a picture titled) "10 Examples of Narcissistic Abuse"
3. "Highly recommend this book to help heal. #DomesticAbuse"
4. (Posts a photo) "Psychopath free – Jackson MacKenzie"
5. (Retweets by LucyLatham titled: "Narcissist") "There is absolutely no truth in a Narcissist's world and that world of theirs is constantly changing to meet THEIR needs"

iii.   March 11, 2023
1. (Retweets by LucyLatham titled: "Narcissist") "Narcissists work extremely hard at making themselves believable as it concerns their overt lies and myths about themselves"

iv.   March 13, 2023

1. "It's interesting when the abuse lies on the police report.  When the abuser is 185lbs and the victim is 99.2lbs.  Typical because the police see consistently with abusers. Put ring cameras in your hose ladies. It will save you. #DomesticAbuse #DomesticViolence"
2. (Posts a photo) "A narcissist mindset.  That didn't happen, and if it did, it wasn't that bad, and if it was, it's not a big deal, and if it is, I didn't mean to do it, and if I did, that was your fault. – E.S."

v.   March 25, 2023

1. Public records case 23030080. Billy Johnson has arraignment in Town of Onondaga court on April 6th for Obstruction of breathing and harassment to his girlfriend. @IMSA @GT4America @RaceSonoma @GaryPattersonSA @AaronShelby @jimfarley98 @NBCSports @espn @sportscar365 @Ford
2. Public records case 23030080. Pro race car driver has #DomesticViolence arraignment in Town of Onondaga court for obstruction of breathing aka choking his girlfriend. #gt4america #imsa #Ford #shelbyamerican #sonomaraceway #DomesticAbuse #SaturdayMorning

u.   On March 25, 2023 post on @BillyJRacingUpdates, Doe Defendant 7 wrote:

"[Plaintiff has arraignment in Town of Onondaga court on April 6th for Obstruction

of breathing and harassment to his girlfriend.  @IMSA  @GT4America

@RaceSonoma @GaryPattersonSA @AaronShelby @jimfarley98 @NBCSports
@espn @sportscar365@Ford."

v.   In another March 25, 2023 post on @BillyJRacingUpdates, Doe Defendant 7 wrote:
"Pro race car driver has #DomesticViolence arraignment in Town of Onondaga
court for obstruction of breathing aka choking his girlfriend. #gt4america #imsa
#Ford #shelbyamerican #sonomaraceway #DomesticAbuse #SaturdayMorning."

w.   On April 10, 2023, Doe Defendant 10 posted on Reddit by username
"rykhusvoresy" stated "It has come to light in May of 2019 Billy Johnson pulled a
knife on a girl after a car accident. Hehit a girls car in Florida and drove off ( Car
registered to Multimatic). The girl chased him down to get his plate and he stopped
the car, got out and proceeded to pull a knife on her. He was charged by Palm Beach
Sherriffs office. He paid to get it expunged from public records, but his attorney
failed to have it removed from the Sheriff's Office records."

48.   The malice-driven campaign to "ruin [Plaintiff's] life forever" did not end with the
abovementioned efforts. Instead, from March 25, 2023 to at least October 11, 2023, Defendants
continued to post to various social media sites defaming and disparaging Plaintiff, and falsely
accusing Plaintiff of physical assault, and also constantly reposted the false Affidavit Statement.

49.   Defendants also waged a smear campaign in the public news media against Plaintiff
which resulted in far sweeping negative press coverage negatively portraying Plaintiff, thereby
furthering BORELL's determined pursuit to "ruin [Plaintiff's] life forever."

50.   Upon information and belief, Defendants utilized one of more of the following
email addresses to disseminate the defamatory statements to third parties:

a.   themariavalentina@gmail.com;

15

b.   themariavalentina@yahoo.com,

c.   borellracingstable@gmail.com,

d.   borellracingstables@gmail.com,

e.   ValentinaLaser@gmail.com,

f.   advantagelasertherapy@gmail.com,

g.   downtownsgone@aol.com,

h.   beaconhillky@gmail.com,

i.   juturnafarms@gmail.com,

j.   rubylunamarie@gmail.com,

k.   somethingintheorange3@gmail.com,

l.   stopalldomesticviolencenow@gmail.com and

m.   missionosmosis@gmail.com

51.   Such a calculated effort to disseminate misinformation resulted in a tremendous amount of additional harmful negative, false, defamatory, and disparaging statements to be spread publicly about Plaintiff.

52.   For example, upon information and belief, in or around March 29, 2023, an ESPN News Reporter was contacted by one or more of the Defendants requesting the reporter to write a story about Plaintiff's claimed physical assault on Defendant BORELL.

53.   On April 5, 2023, a reporter from Syracuse.com called the Plaintiff because he was writing a story about the criminal charges against Plaintiff.   On April 6, 2023, Syracuse.com published an article: "Pro race car driver charged with choking woman in Onondaga; driver denies allegations".

54.     As a result of Defendants actions detailed herein, on April 7, 2023, TobyChristie.com, a racing website, posted an article titled: "Former NASCAR Driver Billy Johnson Charged with Choking New York Woman; Denies Allegations".  @TobyChristieCom tweets: "#NASCAR NEWS: Billy Johnson, a former NASCAR competitor and driver coach, was arraigned Thursday on charges that he choked a woman in New York.  The 36-year-old driver has denied these allegations, entering a plea of not guilty to both charges."

55.     As a result of Defendants actions detailed herein, on April 8, 2023, Joseph Srigley of TobyChristie.com tweeted and reposted the @TobyChristieCom tweet and said: "Billy Johnson – a six time #NASCAR National Series starter – was arraigned Thursday on charges that he choked a woman in New York.  The 36-year old driver has denied these allegations, entering pleas of not guilty to both charges."

56.     As a result of Defendants actions detailed herein, on April 10, 2023, an article on FirstSportz.com was published, titled: "Ex-Nascar driver arraigned for allegedly choking a woman in New York.  Billy Johnson denied the allegations and pleaded not guilty."

**Defendants Efforts Successfully "ruin[ed] [Plaintiff's] life forever" in Many Respects**

57.     On February 28, 2023, after Michael Levitas received an email correspondence from Defendant BORELL, Plaintiff was fired by TPC Racing where he was once gainfully and happily employed.  Plaintiff was fired as a direct result of the false allegations in the Affidavit Statement that resulted in assault charges against Plaintiff and the resulting defamatory communications sent directly to TPC Racing and those that tagged TPC Racing. Plaintiff forever lost the benefits under the once fruitful TPC Racing contract.

58.     As another example, at the end of 2022, there was a strong verbal commitment by RFK Racing to continue hiring Plaintiff for consultation services in 2023.  However, due to the

false allegations by Defendant, and the resulting defamatory communications sent directly to RFK Racing and those that tagged RFK Racing, RFK Racing did not follow through with its commitment to retain Plaintiff for consultation services.

**BORELL And JANE DOES 1-10 Evade Service of Plaintiff's Lawsuit**

59.     An earlier version of this action was filed in New York State court on December 12, 2023.

60.     Defendant BORELL was served with the prior Complaint at her previously identified address, which was an address she specifically provided to a family court in New York, in connection with a separate Order of Protection that she sought in New York against Plaintiff.

61.     Defendant BORELL defaulted in responding to the prior New York Complaint, and filed a motion to dismiss alleging improper service.

62.     The state Court in New York ultimately denied Plaintiff's motion for Default Judgment and granted Defendant BORELL's motion to dismiss based on service.

63.     Defendant BORELL continues to evade any service efforts, including hiring of an attorney to represent her interests in that New York matter, but still hiding in the shadows and refusing to disclose or identify her location.

64.     Defendant BORELL, and the other Jane Doe defendants utilize multiple alias online identities to hide from detection or identification.

65.     As a result of the Defendants wrongful conduct, described herein, and Plaintiff's need to protect and enforce his legal rights, Plaintiff has retained the undersigned attorneys, and its past attorneys in the New York matter, and is required to pay attorneys' fees and costs in order to prosecute this matter.

**CAUSES OF ACTION**

**Count I- DEFAMATION**

66.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation contained within paragraphs 1 through 65, as if fully set forth herein.

67.     As described above, Defendants have repeatedly stated false information that, *inter alia,* Plaintiff physically assaulted Defendant BORELL.

68.     The statements were untrue and defamatory in that they falsely stated, *inter alia,* that Plaintiff physically assaulted Defendant BORELL.

69.     These false and defamatory statements were accessible and were actually received and read by people in this District.

70.     These false and defamatory statements by Defendants were not privileged.

71.     Defendants made their defamatory statements with the actual knowledge that they were false.  In the alternative, they made these statements with constructive knowledge of their falsity.  In the further alternative, they made the statements with reckless disregard for the truth. And at the very least, they were negligent in making them with respect to their truth or falsity and the damage they would cause to the Plaintiff.

72.     Defendants' statements constitute defamation because they impugn Plaintiff's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely claiming, *inter alia*, that Plaintiff physically assaulted the Defendant.

73.     Defendants' statements constitute defamation because they, inter alia, accuse Plaintiff of committing a crime.

74.     Defendants' defamatory statements had no factual basis.

75.     Defendants' defamatory statement tend to so harm the reputation of Plaintiff as to lower his personal and professional reputations in the community and/or deter others from associating with Plaintiff.

76.     Defendants' defamatory statements have harmed Plaintiff's professional reputation and standing in his industry, have caused him economic harm, have caused him to incur special damages in the form of actual pecuniary loss, including loss of income, benefits, job security and opportunities for career advancement and have caused him embarrassment, humiliation and emotional injury.

77.     As a direct and proximate result of Defendants' defamation, Plaintiff has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and emotional distress.

78.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, harm and damages for which he is entitled to an award of monetary damages and other relief.

79.     Defendants' defamatory statements were made with actual malice, and were malicious, willful, wanton, and done with reckless disregard for Plaintiff's rights.  As such, Plaintiff is entitled to an award of punitive damages.

## Count II DEFAMATION *PER SE*

80.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation contained within paragraphs 1 through 65, as if fully set forth herein.

81.     As described above, Defendants have repeatedly stated false information that, *inter alia,* Plaintiff physically assaulted Defendant BORELL.

82.     The statements were untrue and defamatory in that they falsely reported, *inter alia*, that Plaintiff physically assaulted Defendant BORELL.

83.     These false and defamatory statements were accessible and were actually received and read by people in this District.

84.     These false and defamatory statements by Defendants were not privileged.

85.     Defendants made their defamatory statements with the actual knowledge that they were false.  In the alternative, they made these statements with constructive knowledge of their falsity.  In the further alternative, they made the statements with reckless disregard for the truth.  And at the very least, they were negligent in making them with respect to their truth or falsity and the damage they would cause to the Plaintiff.

86.     Defendants' statements constitute defamation *per se* because they impugn Plaintiff's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely claiming, *inter alia*, that Plaintiff physically assaulted Defendant BORELL.

87.     Defendants' statements constitute defamation *per se* because they accuse Plaintiff of committing a crime and tends to subject Plaintiff to hatred, distrust, ridicule, contempt, or disgrace.

88.     Defendants' statements constitute defamation *per se* because they tend to injure Plaintiff in his trade or profession, and in fact did cause such harm.

89.     Defendants' defamatory statements have harmed Plaintiff's professional reputation and standing in his industry, have caused him economic harm, have caused him to incur special damages in the form of actual pecuniary loss, including loss of income, benefits, job security and opportunities for career advancement and have caused him embarrassment, humiliation and emotional injury.

90.     As a direct and proximate result of Defendants' defamation *per se*, Plaintiff has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and emotional distress.

91.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

92.     Defendants' defamatory statements were made with actual malice, and were malicious, willful, wanton, and done with reckless disregard for Plaintiff's rights.  As such, Plaintiff is entitled to an award of punitive damages.

## COUNT III DEFAMATION PER QUOD

93.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation contained within paragraphs 1 through 65, as if fully set forth herein.

94.     As described above, Defendants have repeatedly stated false information that, inter alia, Plaintiff physically assaulted Defendant BORELL.

95.     The statements were untrue and defamatory in that they falsely stated, inter alia, that Plaintiff physically assaulted Defendant BORELL.

96.     These false and defamatory statements were actually received and read by people in this District.

97.     These false and defamatory statements by Defendants were not privileged.

98.     Defendants made their defamatory statements with the actual knowledge that they were false.  In the alternative, they made these statements with constructive knowledge of their falsity.  In the further alternative, they made the statements with reckless disregard for the truth. And at the very least, they were negligent in making them with respect to their truth or falsity and the damage they would cause to the Plaintiff.

22

99.     Defendants made the statements and given their natural and common meaning, are injurious as a consequence of extrinsic facts and surrounding context, including the reference to Affidavit Statement, attachment of the Affidavit Statement, and forum in which the communications/statements were published or disseminated.

100.     Defendants' statements constitute defamation because they impugn Plaintiff's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely claiming, inter alia, that Plaintiff physically assaulted the Defendant.

101.     Defendants' statements constitute defamation because they, inter alia, accuse Plaintiff of committing a crime.

102.     Defendants' defamatory statements had no factual basis.

103.     Defendants' defamatory statement tend to so harm the reputation of Plaintiff as to lower his personal and professional reputations in the community and/or deter others from associating with Plaintiff.

104.     Defendants' defamatory statements have harmed Plaintiff's professional reputation and standing in his industry, have caused him specific economic harm, have caused him to incur special damages in the form of actual pecuniary loss, including loss of income, loss of benefits, loss of employment and opportunities for career advancement and have caused him embarrassment, humiliation and emotional injury.

105.     As a direct and proximate result of Defendants' defamation, Plaintiff has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace, loss of employment and emotional distress.

106.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, harm and damages for which he is entitled to an award of monetary damages and other relief.

107.    Defendants' defamatory statements were made with actual malice, and were malicious, willful, wanton, and done with reckless disregard for Plaintiff's rights.   As such, Plaintiff is entitled to an award of punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing counterclaims asserted, Plaintiff **WILLIAM R. JOHNSON,** prays for judgment against Defendants as follows:

A.  An award of damages against Defendants in an amount that will be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages;

B.  An award of damages, against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for emotional distress;

C.  An award of damages for all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

D.  An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

E.   Prejudgment interest on all amounts due;

F.   An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and cost to the fullest extent permitted by law;

G.   Injunctive relief requiring the removal of the defamatory communications from the forums in which they were posted online; and

H.   Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff **WILLIAM R. JOHNSON** demands a trial by jury of all issues so triable.

Respectfully Submitted,

Dated: February 21, 2025

/s/Darren Spielman
DARREN SPIELMAN, ESQ.
FLA. BAR No. 010868
dspielman@conceptlaw.com
ALEXANDER D. BROWN, ESQ.
FLA. BAR NO. 752665
abrown@conceptlaw.com
THE CONCEPT LAW GROUP, P.A.
6400 N. Andrews Ave., Suite 500
Fort Lauderdale, Florida 33309
(754) 300-1500

Attorneys for Plaintiff

*State of California*
*County of Orange*          **VERIFICATION**

**STATE OF FLORIDA**          )
**COUNTY OF PALM BEACH**     ) ss.:

    **WILLIAM R. JOHNSON**, being duly sworn, deposes and says that deponent is a Plaintiff in the within action; that deponent has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes them to be true.

_____
**WILLIAM R. JOHNSON**

Subscribed and sworn to before me
this 21st day of February , 2025.

_____
**Notary Public**
*State of California*
*County of Orange*

JAMES PAK
Notary Public - California
Orange County
Commission # 2357487
My Comm. Expires May 13, 2025

**NOTARY CERTIFICATE ATTACHED**

26

# JURAT

........................................................

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Orange } ss.

Subscribed and sworn to (or affirmed) before me on this 21st day

of _February_, 2025, by _William R. Johnson_ and

_____, proved to me on the basis of

satisfactory evidence to be the person(s) who appeared before me.

JAMES PAK
Notary Public - California
Orange County
Commission # 2357487
My Comm. Expires May 13, 2025

(seal)

Signature of Notary
Name of Notary: **James Pak**

........................................................
**OPTIONAL INFORMATION**

Date of Document                          February 21, 2025

Type or Title of Document             Verification (Jury Trial Demanded)

Number of Pages in Document                    N/A

Document in a Foreign Language                 N/A


Capacity of Signer:
_X_ Individual
____ Corporate Officer – Title(s): _____
____ Partner – □ Limited  □ General
____ Attorney In Fact
____ Trustee
____ Guardian or Conservator
_X_ Other: Plaintiff

Signer Is Representing: _____