UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-80252-AMC

WILLIAM R. JOHNSON,

          Plaintiff,

v.

MARIA BORELL,

          Defendant.

_____/

**REPORT AND RECOMMENDATION ON MOTION TO DISMISS**

Defendant, Maria Borell, moves to dismiss the Second Amended Complaint ("SAC") under Fed. R. Civ. P. 41(b), 12(b)(1), 12(b)(2), and 12(b)(6) ("Motion to Dismiss"). ECF No. 62. The motion is fully briefed. ECF Nos. 87 (response), 100 (reply). It has been referred to me for a recommendation. ECF No. 103. Previously, I recommended that the Court deny the Motion insofar as it asserts a lack of subject matter jurisdiction. ECF No. 112. Now, after examining the record with respect to personal jurisdiction over Ms. Borell, it is RECOMMENDED that the Motion to Dismiss be GRANTED for lack of personal jurisdiction and that the SAC be DISMISSED without prejudice.

## I.   BACKGROUND

Plaintiff, William Johnson, sues Ms. Borell and asserts three defamation-based claims against her. ECF No. 60. The following allegations relevant to personal jurisdiction are taken from the SAC:

Mr. Johnson and Ms. Borell dated from June 2022 to February 8, 2023. ¶27.[1] On February 8, 2023, Ms. Borell executed an affidavit for law enforcement that accused Mr. Johnson of assaulting her. ¶35. From February 24, 2023, through October 11, 2023, Ms. Borell published statements through social media platforms and direct communications with various individuals affiliated with Mr. Johnson. ¶¶39–44. Ms. Borell published social media posts accusing Mr. Johnson of domestic violence and/or republishing the affidavit that Mr. Johnson claims is defamatory. *Id*. The "defamatory actions and statements, including through republication of [Ms. Borell's] Affidavit Statement, have been viewed by an untold number of persons, and ha[ve] been accessed by and viewed by persons within this District."[2] ¶41. Ms. Borell contacted individuals and entities involved in Mr. Johnson's industry, but the SAC does not allege where these individuals were located, whether Ms. Borell knew their locations, or what methods of contact were employed. ¶¶43–44. The SAC alleges that Ms. Borell "directly contacted" an individual who owns a Florida-based racing team

---

[1] Unless otherwise noted, paragraph citations are taken from the SAC, ECF No. 60.

[2] The SAC does not specifically identify any persons in this District or in Florida who accessed or viewed the statements.

and unidentified employees of a Florida-based racing series. ¶43. The SAC does not allege that Ms. Borell was in Florida when she published the allegedly-defamatory statements.

## II. LEGAL PRINCIPLES OF PERSONAL JURISDICTION

The United States Constitution and the Florida long-arm statute prevent a defendant from being forced to defend herself in the courts of a particular state unless that state can properly exercise personal jurisdiction over her. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *American Airlines, Inc. v. Spada*, No. 23-CV-21844, 2024 WL 2797379, at *3 (S.D. Fla. May 1, 2024). There are two types of personal jurisdiction: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction extends to any claim against a defendant, regardless of the connection between the claim and the defendant's contacts with the forum; specific jurisdiction extends only to claims with a nexus to those contacts. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court,* 592 U.S. 351, 359 (2021). In either case, the first question is whether personal jurisdiction exists under the forum state's long-arm statute. Even if personal jurisdiction is authorized under a long-arm statute, the exercise of jurisdiction also must comport with the federal due process clause. *See, e.g., Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1354 (11th Cir. 2013); *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1343 (S.D. Fla. 2017) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).

3

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs.*, 556 F.3d at 1274); *see also Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (noting plaintiff has the burden of establishing a prima facie case of personal jurisdiction, and "[a] prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict" (internal quotation marks omitted) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990))).

A defendant challenges personal jurisdiction by filing a motion under Federal Rule of Civil Procedure 12(b)(2). The challenge can be facial or factual. "[A] motion to dismiss, without more, challenges only the facial sufficiency of the jurisdictional pleading." *Kemin Foods, L.C. v. Omniactive Health Techs., Inc.*, 654 F. Supp. 2d 1328, 1333 (M.D. Fla. 2009) (quoting *Walt Disney Co. v. Nelson,* 677 So. 2d 400 (Fla. 5th DCA 1996)). If the defendant includes affidavits or other evidence in support of the 12(b)(2) motion, the question of personal jurisdiction is resolved by reference to facts outside the four corners of the complaint. *Id.*

Where a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss and submits evidence in support of her position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier*, 288 F.3d at 1269. The plaintiff must then "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the

4

factual allegations in the complaint." *Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and still must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara*, 916 F.2d at 1514.

"Where a complaint lacks jurisdictional allegations to sufficiently establish a *prima facie* case, 'the district court doesn't go to the second and third steps of the burden-shifting process, and the motion [to dismiss] should be granted.'" *Andres v. Raytheon Techs. Corp*, No. 21-CV-61757, 2022 WL 1015489, at *2 (S.D. Fla. Apr. 5, 2022) (quoting *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 849 (11th Cir. 2020)). In addition, "if a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss, Federal Rule of Civil Procedure 12(i) affords the district court discretion on how to proceed." *Karnas v. Cuban*, No. 22-CV-22538, 2025 WL 3759241, at *4 (S.D. Fla. Dec. 26, 2025) (quoting *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025)). The district court may "(1) hold an evidentiary hearing before trial to make factual findings about personal jurisdiction or (2) decide the motion to dismiss under a prima facie standard without an evidentiary hearing." *Id.* at *4. "[I]f the district court does not hold an evidentiary hearing, it simply reviews whether the plaintiff satisfies the prima facie requirement, which is a purely legal question." *Id.*; *see also Mut. Serv.*

*Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 n.6 (11th Cir. 2004) ("[W]hen a defendant moves to dismiss for lack of personal jurisdiction, an evidentiary hearing is not required."). Still, "the district court must construe all reasonable factual inferences in favor of the plaintiff." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)).

### III. DISCUSSION

Here, the SAC alleges only specific jurisdiction. ¶¶7–10. The Motion is a facial attack, as Ms. Borell challenges the SAC's allegations but does not attach affidavits or other evidence in support of her contentions regarding personal jurisdiction.[3] Mr. Johnson also does not attach evidence to his Response, relying on the SAC's allegations. The SAC invokes personal jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a), on the grounds that Ms. Borell committed tortious conduct including "knowingly directing the defamatory statements/publications into the State of Florida with the intent that same be received into this State." ECF No. 60 ¶7. The SAC also alleges that Ms. Borell has sufficient minimum contacts with Florida, that she targeted a forum resident intending to cause harm to the resident, and that she "intentionally directed illegal acts towards the citizens and residents of Florida." *Id.* ¶¶8–10. As far as factual support, the SAC alleges that Ms. Borell contacted numerous individuals who were part of Mr. Johnson's industry, one of which is

---

[3] Ms. Borell has filed multiple affidavits in this litigation; however, those affidavits relate to Mr. Johnson's citizenship and other facts not relevant to her contacts with Florida.

6

alleged to be the owner of a "Florida based" racing team along with an unknown number of unidentified employees of a "Florida based racing series." ¶43. Finally, the SAC alleges that Ms. Borell "tagged" these two Florida-based entities in social media posts. ¶44. As to all remaining targets of Ms. Borell's communications and posts, none is alleged to be connected to Florida. Ms. Borell says she has not been in Florida since a short stay in January 2023, did not commit any act in Florida, and did not direct any statements into Florida. ECF No. 62 at 3. Thus, she concludes, the Court has no personal jurisdiction over her pursuant to the long-arm statute and the Due Process Clause. *Id.*

Mr. Johnson responds that the well-pleaded allegations detail that Ms. Borell sent communications to individuals and entities located in Florida, disseminated an affidavit to racing authorities that operate in and make decisions in Florida, and created social media accounts to broadcast content into Florida.[4] ECF No. 87 at 11. In her Reply, Ms. Borell argues that Mr. Johnson fails to allege that any of her conduct took place in Florida, fails to identify Florida recipients of any publications, and fails to allege harm felt in Florida. ECF No. 100 at 6, 10. She reiterates that "jurisdictional contacts must be the defendant's own purposeful contacts with the forum, not unilateral or plaintiff-centric connections." *Id.* at 5–6.

---

[4] The SAC does not provide this level of detail regarding the locations of the individuals and entities that are alleged to have received the communications. *Compare* ECF No. 87 at 11 *with* ¶¶43–44.

First, Florida's long-arm statute creates specific jurisdiction over "any cause of action arising from," as relevant here, "[c]omitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). "In order to prove specific jurisdiction, there must be a 'connection or connexity' between the enumerated activity in Florida and the cause of action." *Yarger v. Convergence Aviation Ltd*, 310 So. 3d 1276, 1280 (Fla. 5th Dist. Ct. App. 2021) (quoting *Aegis Def. Servs., LLC v. Gilbert,* 222 So. 3d 656, 661 (Fla. 5th DCA 2017)) (cleaned up). "In other words, the causes of action alleged in the complaint must arise from the defendant's activities in Florida." *Yarger,* 310 So. 3d at 1280. A defendant's physical presence in Florida is not necessary; rather, "'committing a tortious act' in Florida under section 48.193(1)[(a)(2)][5] can occur through the nonresident defendant's telephonic, electronic, or written communications *into* Florida. . . . However, the cause of action must arise from the communications." *Internet Sol'ns Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010) (emphasis in original).

Ms. Borell asserts that she does not reside in Florida and has not been in Florida since a brief visit in January 2023, that she "did not commit any act in Florida, did not direct any statement into Florida." ECF No. 62 at 3. The SAC does

---

[5] Section 48.193 was amended effective July 1, 2016. The amendments re-organized the numbering of the subsections but did not make any substantive changes that affect the subsections at issue in this case or the analysis of jurisdictional issues presented here. *Compare* Fla. Stat. § 48.193 (2008) *with* Fla. Stat. § 48.193 (2016).

not allege that she resides in Florida, has been physically present in Florida, or committed any acts in Florida.

In response, Mr. Johnson relies on section 48.193(1)(a)(2) of the long-arm statute, which provides for personal jurisdiction over a person who "commit[s] a tortious act within the State." ECF No. 87 at 11–12. He argues that the SAC "details that Borell sent emails and messages to individuals and entities located in Florida, including Plaintiff's employers, racing bodies, and professional contacts. Defendant disseminated a defamatory affidavit to racing sanctioning authorities that oversee Defendant's profession and that operate and make decisions in Florida. She created and operated numerous social media accounts for the purpose of broadcasting defamatory content into Florida." ECF No. 87 at 11.

In Ms. Borell's Reply, she argues that the Response "identifies no Florida recipient of any alleged publication, and alleges no harm felt in Florida." ECF No. 100 at 10. Finally, Ms. Borell contends that "[j]urisdictional theories premised on Internet publication fail where the defendant's contacts with the forum are absent; nationally available platforms do not create Florida-directed publication." *Id.* at 12.

Mr. Johnson's Response cites *Internet Solutions* for the proposition that section 48.193(1)(a)(2) confers jurisdiction over a defendant who allegedly posts defamatory statements on the Internet. In *Internet Solutions*, the Florida Supreme Court addressed, in a certified question from the Eleventh Circuit, whether a nonresident committed a tortious act for purposes of the long-arm statute when she made allegedly defamatory statements about a Florida company on her website, where the

9

posts were accessible and accessed in Florida. *Id.* at 1203. The Court concluded that this conduct gave rise to personal jurisdiction under the long-arm statute, but expressly declined to analyze whether exercising jurisdiction violated the Due Process Clause. *Id.* at 1216 ("The second step is a more restrictive one, precluding suit in any situation where the exercise of jurisdiction over the nonresident defendant would violate due process. This question is not before us in the certified question and we do not deem it necessary to broaden the question.").

Here, I need not reach whether personal jurisdiction over Ms. Borell is permissible under the long-arm statute because it is impermissible under the Due Process Clause. *See Karnas v. Cuban*, No. 22-CV-22538, 2025 WL 3759241, at *7 (S.D. Fla. Dec. 30, 2025); *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) ("If both Florida law and the United States Constitution permit, the federal district court may exercise jurisdiction over the nonresident defendant.").

The Due Process Clause of the Fourteenth Amendment "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). In analyzing whether it may exercise personal jurisdiction under the Due Process Clause, a court examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing multiple cases). Courts employ two tests to determine whether exercising personal jurisdiction comports with the Due Process Clause: (1) the Effects Test and (2) the Minimum Contacts Test. *Karnas*, 2025 WL 3759241, at *7–11; *Calder v. Jones*, 465 U.S. 783, 789 (1984); *Louis Vuitton*, 736 F.3d at 1357.

Here, the SAC alleges the following facts relating to contacts between Ms. Borell and Florida during the relevant time period, as relevant to personal jurisdiction under the Due Process Clause: (1) Ms. Borell is aware that Mr. Johnson resides in Florida (¶28); (2) Ms. Borell contacted[6] Dean Martin, the owner of KOHR, which is based in Florida (¶43); (3) Ms. Borell contacted unidentified employees of IMSA, which is based in Florida (¶43); (4) Ms. Borell "tagged" KOHR and IMSA in social media posts (¶44(a)-(b)); (5) Ms. Borell started a Reddit "thread" that involved IMSA among other individuals or entities (¶44(e)). The Court has not identified any other alleged communications or actions in the SAC that show a connection between Ms. Borell and Florida.

Ms. Borell argues that the exercise of personal jurisdiction over her would violate the Due Process Clause because she did not commit any acts in Florida or direct any statements into Florida. ECF No. 62 at 3. Further, she contends that even if Mr. Johnson resides in Florida, that fact is still insufficient under *Walden* to confer jurisdiction. *Id.* (citing *Walden*, 571 U.S. 277). Mr. Johnson argues that Ms. Borell

---

[6] The means by which Ms. Borell contacted Mr. Martin and the unidentified employees is not alleged, nor is their location when they were contacted.

11

intentionally directed a campaign of online defamation into Florida, which is sufficient to satisfy minimum contacts and the Effects Test. ECF No. 87 at 10–11. In her Reply, Ms. Borell argues that the Response misapplies the law by "conflating Plaintiff's unilateral Florida ties with Defendant's contacts" and reiterating that "jurisdictional contacts must be the defendant's own purposeful contacts with the forum." ECF No. 100 at 10. She further argues that "nationally available platforms do not create Florida-directed publication." *Id.* at 12.

### A. The Effects Test

The Effects Test requires a showing that Ms. Borell "(1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.28 (11th Cir. 2009). Assuming without deciding that the SAC plausibly alleges the intentional tort of defamation, it fails to satisfy the second and third prongs of the Effects Test. A defendant's actions "do not create sufficient contacts with the forum state 'simply because he allegedly directed his conduct at [a] plaintiff[ ] whom he knew had ... connections' with the forum state." *Moore v. Cecil*, 109 F.4th 1352, 1363 (11th Cir. 2024) (quoting *Walden*, 571 U.S. at 289).

In *Moore*, the Eleventh Circuit addressed how courts should navigate personal jurisdiction in the "unique context" of social media and other "internet-based activities." 109 F.4th at 1363–64. In determining whether this type of conduct is

12

directly aimed at Florida, courts "must look to the defendant's focus, purpose, and/or intent in posting the information." *Id.*

> "[W]here the out-of-state defendant deliberately directs his posting at the plaintiff or at an audience in the forum state," the " 'directly aimed at the forum' prong of the *Calder* effects test is satisfied." But, "where there is no evidence that the defendants posted the...information hoping to reach the forum state or an audience in the forum state *specifically*, then the *Calder* effects test is not satisfied."

*Karnas*, 2025 WL 3759241, at *8 (emphasis in original) (quoting *Moore*, 109 F.4th at 1364) (internal citations omitted); *Calder*, 465 U.S. at 789. "Mere knowledge that the effects of the defendant's conduct would be felt in the forum state, without more, is insufficient." *Moore*, 109 F.4th at 1363–64. A plaintiff must show that the forum state is the "focal point" of social media postings and that the defendant intended to target an audience specifically in that state for personal jurisdiction to be proper. *Id.* at 1364. A "plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." *Internet Sol'ns Corp. v. Marshall*, No. 07-CV-1740, 2010 WL 11617855, at *4 (M.D. Fla. Sept. 30, 2010) (following remand) (quoting *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002)).

Here, the SAC contains no specific allegations that Ms. Borell targeted a Florida audience or knew the effects of her conduct would be felt specifically in Florida. The SAC alleges that her statements "were directed to, accessible and were actually received and read by people in this District and the State of Florida" and that Ms. Borell contacted "the owner of Florida Based KOHR Motorsports" ("KOHR") and employees of the "Florida based IMSA racing series." ("IMSA"). ¶¶43, 56, 71. The

13

SAC further alleges that Ms. Borell "tagged" the IMSA and KOHR social media accounts, among other accounts, in posts. ¶44. But there are no allegations that these accounts are located in Florida, that Ms. Borell knew any of the individuals or entities were in Florida, or that she intended her conduct's effects to be felt in Florida. The SAC also contains no allegations that she knew where any recipients of her postings or communications were located such that she intended to direct communications specifically into Florida. In short, nothing in the SAC shows that Florida was the focal point of Ms. Borell's statements or that she should have anticipated harm specific to Florida; thus, the allegations are insufficient to satisfy the Effects Test for personal jurisdiction.

The Response cites *Adam J. Rubinstein, M.D., P.A. v. Ourian*, No. 20-CV-21948, 2020 WL 6591559 (S.D. Fla. Nov. 10, 2020), for the proposition that a defamation campaign directed into Florida was sufficient to exercise personal jurisdiction over the defendant. ECF No. 87 at 11–12. In *Rubinstein*, the plaintiff and defendant were rival plastic surgeons. *Rubinstein*, 2020 WL 6591559, at *1. The defendant allegedly published various communications including a blog post about the plaintiff's lack of qualifications and comments about a procedure the plaintiff botched. *Id.* In addition, the complaint alleged that the defendant conspired with third parties to post negative and false reviews about the plaintiff's Florida business on multiple websites in an attempt to undermine the business. *Id.* The complaint alleged that plaintiff's patients in Florida saw the reviews and mentioned them to plaintiff. *Id.* at *2. The court concluded that the plaintiff alleged sufficient facts to

14

make a *prima facie* case that the defendants engaged in a scheme to retaliate against the plaintiff and harm his Florida business, satisfying the Effects Test. *Id.*

Here, unlike *Rubinstein*, the SAC does not allege that Ms. Borell specifically aimed her communications at Florida or targeted individuals or businesses in Florida, or that the communications were seen by individuals in Florida. Rather, it alleges that she disseminated statements generally, a few of which might have reached individuals or entities that happened to have a Florida connection. The allegations against Ms. Borell do not indicate the targeted conduct alleged in *Rubinstein*, and do not satisfy the Effects Test.

Mr. Johnson also cites *Gubarev v. Buzzfeed, Inc.*, 235 F. Supp. 3d 1149 (S.D. Fla. 2017) in support of his contention that personal jurisdiction over Ms. Borell is proper. ECF No. 87 at 12. However, in *Gubarev*, the court found that the defendant not only intentionally published material on its website it knew would reach Florida, it also facilitated interactions with Florida by sending reporters to Florida, creating advertising specifically for Florida, and engaging in newsgathering efforts in Florida. *Gubarev*, 235 F. Supp. 3d at 1160. Those actions far exceed what the SAC has alleged regarding Ms. Borell's contacts with Florida, and *Gubarev* does not apply in this case.

Accordingly, even construing the allegations in the light most favorable to Mr. Johnson, I conclude that the SAC does not contain sufficient allegations to satisfy the Effects Test for personal jurisdiction.

### B. The Minimum Contacts Test

Next, under the Minimum Contacts Test, courts "assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. In that analysis, a court "identif[ies] all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." *Id.* "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over [her]." *Walden*, 571 U.S. at 285.

"Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) ("The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'"); *Sturmanskie LLC v. Picturemaxx Ag*, No. 21-CV-21090, 2022 WL 3030451, at *8 (S.D. Fla. July 5, 2022) ("*Walden* requires that the Court look to Defendants' contacts with *the forum*, not Defendants' contacts with *Plaintiff*."), *report*

16

*and recommendation adopted*, 2022 WL 3028072 (S.D. Fla. Aug. 1, 2022) (emphasis in original).

Construing these SAC's allegations in the light most favorable to Mr. Johnson, the SAC still does not establish a *prima facie* case for personal jurisdiction over Ms. Borell based on minimum contacts. Essentially, the SAC alleges that Ms. Borell engaged in a widespread effort to disseminate defamatory statements to audiences located anywhere, not specifically in Florida, with a few recipients possibly located in Florida. Only a small handful of contacts even have a remote connection to Florida, and those contacts are "random, fortuitous, or attenuated" at best, and insufficient to meet the standard for minimum contacts under the Due Process Clause. *Walden*, 571 U.S. at 285–86; *see also Sturmanskie*, 2022 WL 3030451, at *8 ("Plaintiff's reliance on the argument that Defendants were sending e-mails and making phone calls with full knowledge that those communications were being directed at a Florida resident is simply not sufficient."); *Micro Fin. Advisors, Inc. v. Coloumb*, No. 23-11062, 2023 WL 7156898, at *4 (11th Cir. Oct. 31, 2023) (allegedly tortious emails and calls to individual in Florida insufficient to show minimum contacts); *Karnas*, 2025 WL 3759241, at *10–11 (nationwide campaign and advertising that reached Florida residents was insufficient for personal jurisdiction). Moreover, the SAC lacks sufficient allegations that Ms. Borell has purposefully availed herself of the privilege of engaging in activities in Florida. For all these reasons, the SAC fails to demonstrate that traditional notions of fair play and substantial justice would allow this case to proceed in a Florida court.

Accordingly, the SAC does not make a *prima facie* case of personal jurisdiction under the Due Process Clause.

Based on the foregoing, I RECOMMEND that Defendant's Motion be GRANTED under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Because there is no personal jurisdiction over Ms. Borell, I further RECOMMEND that this case be DISMISSED WITHOUT PREJUDICE.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If parties do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 26th day of February 2026.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE